UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RAYMOND L. LARSEN, JR. and CAROLE M. LARSEN,<br><br>    Plaintiffs,<br><br>    v.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>    Defendant. | C25-0718 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on a motion, docket no. 30, brought by defendant JPMorgan Chase Bank, N.A. ("Chase"), to dismiss the Amended Complaint, docket no. 29. Having reviewed the operative pleading and all papers filed in support of, and in opposition to, the motion, the Court enters the following Order.

**Background**

According to the Amended Complaint, plaintiffs Raymond L. Larsen, Jr. and Carole M. Larsen, who are husband and wife, are both nonagenarians. Am. Compl. at ¶ 1 (docket no. 29) (indicating that Raymond Larsen is 93 and Carole Larsen is 91 years of age). Plaintiffs allege that, in late November 1987, they purchased two Certificates of Deposit ("CDs"), one in the amount of $50,000 and the other in the amount of $30,000,

ORDER - 1

at Branch 133 of Benjamin Franklin Savings Association ("BFSA"). *Id.* at ¶¶ 7–8. The CDs had maturity dates of May 21, 1988, and February 22, 1988, respectively, and were automatically renewable, *id.* at ¶¶ 9 & 13, albeit presumably not at the original interest rate (8.05%), but rather at the applicable interest rates on the dates of renewal. The terms and conditions of renewal are not, however, set forth on the time deposit receipts reproduced in the operative pleading; instead, the time deposit receipts refer to a separate disclosure that plaintiffs do not currently have in their possession. *See id.* at ¶¶ 9 & 17–18. Plaintiffs allege that, since the CDs were issued, they "have not taken any withdrawals or received payment of any principal or accrued interest." *Id.* at ¶ 21.

Sometime after the CDs were purchased, Raymond Larsen suffered a traumatic brain injury. *Id.* at ¶ 20. He lost memory of prior events, including having entrusted $80,000 to the care of BFSA. *Id.* According to the Amended Complaint, Raymond Larsen discovered the time deposit receipts in the fall of 2024. *Id.* at ¶ 20. During the 36-year interim since the CDs had initially matured, BFSA failed. BFSA entered into receivership in June 1989, and eventually transferred its insured deposits and other assets to Benjamin Franklin FSA, which was acquired in 1991 by Bank One, Texas, National Association, which merged in 2001 with Bank One, N.A., which merged in 2004 with Chase. *Id.* at ¶¶ 22, 24–28, & 32–36. In 2024, plaintiffs attempted to withdraw the principal and accrued interest relating to the CDs, but Chase declined their demand for payment. *Id.* at ¶ 38.

On April 21, 2025, plaintiffs commenced suit against Chase, asserting three causes of action: (i) breach of contract; (ii) conversion; and (iii) violation of Washington's

ORDER - 2

1  Consumer Protection Act ("CPA").  Compl. at ¶¶ 18–39 (docket no. 1).  In August 2025,
2  the Court granted Chase's motion to dismiss the original complaint, without prejudice
3  and with leave to amend.  <u>See</u> Minute Order (docket no. 27).  In their Amended
4  Complaint, in addition to their breach of contract, conversion, and CPA causes of action,
5  plaintiffs have pleaded a claim for unjust enrichment.  Am. Compl. at ¶¶ 47–79 (docket
6  no. 29).  Chase again moves to dismiss, presenting the same grounds as before, namely
7  lack of subject matter jurisdiction and failure to state a claim upon which relief can be
8  granted, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively.
9  **<u>Discussion</u>**
10 **A.      <u>Subject Matter Jurisdiction</u>**
11         Chase presents a facial, rather than a factual, jurisdictional challenge.  A facial
12 attack asserts that the allegations of the complaint are insufficient on their face to invoke
13 federal jurisdiction, while a factual challenge disputes the truth of the allegations in the
14 complaint that would otherwise support subject-matter jurisdiction.  <u>See</u> <u>Safe Air for</u>
15 <u>Everyone v. Meyer</u>, 373 F.3d 1035, 1039 (9th Cir. 2004).  With respect to Chase's facial
16 attack pursuant to Rule 12(b)(1), plaintiffs are entitled to the same safeguards that apply
17 to a Rule 12(b)(6) motion to dismiss for failure to state a claim.  <u>See</u> <u>Leite v. Crane Co.</u>,
18 749 F.3d 1117, 1121 (9th Cir. 2014).  The allegations of the Amended Complaint must be
19 accepted as true and all reasonable inferences must be drawn in plaintiffs' favor.  <u>See id.</u>
20         Chase contends that the Court has been "stripped" of jurisdiction with respect to
21 plaintiffs' claims, which have not been exhausted through an administrative process.
22
23

ORDER - 3

Chase relies on a provision of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), which reads:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over—
>
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation[1] has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D).[2]  Section 1821(d) does not, however, govern plaintiffs' claims, which involve insured deposits.  See Chi. Title Ins. Co. v. Resol. Trust Corp., 868 F. Supp. 135, 138–39 (D.S.C. 1994) (explaining that § 1821(d) outlines procedures for handling "the claims of true creditors," for example, "suppliers of office products and equipment . . . [or] janitorial services"); see also 12 U.S.C. § 1821(d)(4)(B) (authorizing the Corporation to "settle all uninsured and unsecured claims").

---

[1] Until 1989, the "Corporation" referred only to the Federal Deposit Insurance Corporation ("FDIC").  Callejo v. Resol. Trust Corp., 17 F.3d 1497, 1498 (D.C. Cir. 1994).  When Congress enacted the FIRREA and abolished the Federal Savings & Loan Insurance Corporation, which insured deposits at thrifts like BFSA, it made the FDIC the insurer of savings associations, as well as banks.  See id.  At the same time, Congress created the Resolution Trust Corporation ("RTC"), imbuing it with the same powers concerning savings associations (like BFSA) that the FDIC has with respect to banks.  See id. (citing former 12 U.S.C. § 1441a(b)(4)(A)).  Thus, for purposes of § 1821, the "Corporation" means both the RTC and the FDIC.  Id. at 1499.

[2] In its opening brief, Chase actually cited 28 U.S.C. § 1821(d)(13)(D), see Def.'s Mot. at 5–7 (docket no. 30), but the language quoted by Chase, see id. at 5, matches the text of 12 U.S.C. § 1821(d)(13)(D).

ORDER - 4

Rather, plaintiffs' claims relate to the FIRREA section that provides:

> In case of the liquidation of, or other closing or winding up of the affairs of, any insured depository institution, payment of the *insured deposits* in such institution shall be made by the Corporation as soon as possible, subject to the provisions of subsection (g) [regarding the Corporation's subrogation, upon payment to a depositor, to the rights of such depositor against the institution], either by cash or by making available to each depositor a transferred deposit in a new insured depository institution in the same community or in another insured depository institution in an amount equal to the insured deposit of such depositor.

12 U.S.C. § 1821(f)(1) (emphasis added); see Chi. Title, 868 F. Supp. at 138–40. In carrying out its duties under § 1821(f)(1), the Corporation has discretion whether to require the filing of any proof of claims and to approve or reject such claims for insured deposits. See 12 U.S.C. § 1821(f)(2). A final determination made by the Corporation pursuant to § 1821(f) is reviewable within sixty (60) days under the Administrative Procedure Act ("APA") by the district court in the district where the depository institution has its principal place of business. 12 U.S.C. §§ 1821(f)(4)&(5).[3] In this matter, the operative pleading contains no allegation that the Corporation made a determination adverse to plaintiffs, and plaintiffs assert no cause of action against the

---

[3] The FIRREA originally authorized the Corporation to resolve disputed claims relating to insured deposits in accordance with its regulations and, if no regulations had been prescribed, to "require the final determination of a court of competent jurisdiction before paying any such claim." 12 U.S.C. § 1821(f)(3) (1989). In addition, the legislation initially indicated that the Corporation's final determinations could be reviewed under the APA by the United States Court of Appeals for the District of Columbia or the court of appeals for the circuit in which the depository institution's principal place of business was located. See 12 U.S.C. § 1821(f)(4) (1989). The differences between the previous and amended versions of § 1821(f) do not change the result in this case because the operative pleading contains no allegation of a dispute between plaintiffs and the Corporation concerning the insured deposits at issue or of an adverse determination over which this Court would not have had jurisdiction prior to 2006, when the section was revised. See Pub. L. No. 109-351, § 721, 120 Stat. 1966.

ORDER - 5

1    Corporation.  Under the standard applicable to Chase's Rule 12(b)(1) motion, the Court
2    must draw the reasonable inferences that (i) the Corporation complied with § 1821(f)(1)
3    and made available to plaintiffs "a transferred deposit" in "another insured depository
4    institution in an amount equal to the insured deposit," and (ii) the 60-day period to seek
5    judicial review never commenced.  <u>See</u> 5 U.S.C. § 702 (requiring that a person suffer a
6    "legal wrong because of agency action" or be "adversely affected or aggrieved by agency
7    action" to be entitled to judicial review).  Contrary to Chase's contentions, plaintiffs were
8    not required to administratively exhaust their claims (or seek judicial review under the
9    APA), and the FIRREA has not "stripped" the Court of jurisdiction.  The Court concludes
10   that it has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties
11   are diverse (plaintiffs are Washington residents and Chase is based in Ohio, <u>see</u> Am.
12   Compl. at ¶¶ 1–2 (docket no. 29)) and the amount in controversy exceeds $75,000.  The
13   Court therefore turns to Chase's arguments pursuant to Rule 12(b)(6).

14   **B.     <u>Failure to State a Claim</u>**

15           Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not
16   provide detailed factual allegations, it must offer "more than labels and conclusions" and
17   contain more than a "formulaic recitation of the elements of a cause of action."  <u>Bell Atl.</u>
18   <u>Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  In ruling on a motion to dismiss, the Court
19   must assume the truth of a plaintiff's allegations and draw all reasonable inferences in the
20   plaintiff's favor.  <u>Usher v. City of Los Angeles</u>, 828 F.2d 556, 561 (9th Cir. 1987).  The
21   question for the Court is whether the facts in the complaint sufficiently state a "plausible"
22   ground for relief.  <u>See Twombly</u>, 550 U.S. at 570.

23

Chase contends that the CDs at issue were abandoned under state law and, as a result, plaintiffs have no cognizable claims. Chase relies on statutes in (i) Washington, where plaintiffs now live and apparently resided at the time they purchased the CDs, see Am. Compl. at ¶ 9 (docket no. 29) (reproducing time deposit receipts showing an address for plaintiffs in La Conner, Washington), and (ii) Texas, where BFSA was headquartered, see id. Both Washington and Texas currently presume abandonment of a CD after three (3) years of inactivity. See RCW 63.30.040(5); Tex. Prop. Code § 73.101(c). In 1987, however, when plaintiffs purchased the CDs at issue, the Washington statute set forth a clock of five (5) years for presuming matured time deposits had been abandoned. See RCW 63.29.060(1) (1987). The period was decreased to three (3) years in 2003, see RCW 63.29.060(1) (2004) (citing Laws of 2003, 1st Spec. Sess., ch. 13, § 3), which was shortly before Chase merged with Bank One, N.A. For an automatically renewable CD, the Washington statute runs the period for presuming abandonment from the "initial date of maturity *unless the apparent owner consented in a record on file with the holder* to renewal at or about the time of the renewal." RCW 63.30.040(5) (2025) (emphasis added); see also RCW 63.29.060(5) (1987) (containing different wording with the same effect). In contrast, the Texas statute commences the abandonment period when the account becomes inactive, which begins "on the date of the depositor's last transaction or correspondence concerning the account." Tex. Prop. Code § 73.101(b)(1).

/ / /

/ / /

/ / /

ORDER - 7

1        For purposes of determining whether abandonment occurred, the Court will apply the Washington[4] provisions in effect when Chase contends that Bank One, Texas, National Association should have complied with its obligations to report and deliver the allegedly abandoned funds on deposit to the Washington Department of Revenue ("DOR").[5] Under Washington law, the initial maturity date for an automatically renewing CD would not have started the clock running on the abandonment period if the depositor consented to renewal. See RCW 63.29.060(5) (1987). Chase's abandonment theory requires the Court to presume that, as of 1993, Bank One, Texas, National Association (as "holder") had no record on file of plaintiffs' consent to renewal of the CDs. Such inference unfavorable to plaintiffs would be inconsistent with both (i) the operative pleading, see Am. Compl. at ¶¶ 43 & 77 (docket no. 29) (stating that plaintiffs never received "notice from any banking institution that the CDs would not be automatically renewed, or that the CDs had been abandoned or reported as such, . . . [or] that the CDs had been transferred to a government administrator as abandoned property"

---

[4] Chase has not performed the requisite choice-of-law analysis to warrant further consideration of Texas's current statutes. See *Karpenski v. Am. Gen. Life Cos., LLC*, 999 F. Supp. 2d 1235, 1242 (W.D. Wash. 2014) (absent a "real conflict" between the laws of Washington and another state, the Court applies "the 'presumptive local law'").

[5] If Bank One, Texas, National Association had complied in 1993, which was five years after the initial maturity dates of the CDs, with any such obligations to report and deliver plaintiffs' property to the DOR, it would have been "relieved of all liability to the extent of the value of the property paid or delivered for any claim then existing or which thereafter may arise or be made in respect to the property." See RCW 63.29.200(1) (1993); see also RCW 63.30.350(1) (2025) ("A holder that pays or delivers property to the administrator [*i.e.*, the DOR] in good faith and substantially complies with RCW 63.30.280 and 63.30.290 is relieved of liability arising thereafter with respect to payment or delivery of the property to the administrator."). Any such release would have inured to the benefit of its successors, Bank One, N.A. and Chase.

ORDER - 8

1   and that they "never abandoned the funds or consented to forfeiture"), and (ii) the

2   standards governing Rule 12(b)(6) motions, see, e.g., Murguia v. Langdon, 61 F.4th

3   1096, 1106 (9th Cir. 2023) ("In assessing a Rule 12(b)(6) motion to dismiss, the court

4   must take all factual allegations as true and draw all reasonable inferences in favor of the

5   nonmoving party.").

6       Chase has likewise ignored the rules governing notice pleading in arguing that all

7   of plaintiffs' claims must be dismissed because plaintiffs have not articulated every term

8   and condition of the contract at issue. "A plaintiff need not plead the contract terms with

9   unusual specificity. Allegations that meet the notice-pleading standards of Rule 8 will

10  suffice. Put differently, 'it is unnecessary for a plaintiff to allege the terms of the alleged

11  contract with precision,' but 'the Court must be able generally to discern at least what

12  material obligation of the contract the defendant allegedly breached.'" Grouse River

13  Outfitters Ltd. v. NetSuite, Inc., No. 16-cv-2954, 2016 WL 5930273, at *12 (N.D. Cal.

14  Oct. 12, 2016) (citations omitted). In this matter, plaintiffs have stated in their operative

15  pleading the principal amount ($80,000) that they seek from Chase, the key term on

16  which their breach of contract claim is based, namely automatic renewal, and the

17  allegation, which the Court must assume is true, that they have neither withdrawn the

18  funds nor received any of the principal or accrued interest.

19      Plaintiffs' allegations distinguish this case from the one on which Chase relies,

20  namely Lemelson v. Wells Fargo Bank, N.A., 641 F. Supp. 3d 1005 (W.D. Wash. 2022).

21  In Lemelson, the district court granted the defendant's Rule 12(b)(6) motion to dismiss

22  the plaintiffs' breach of contract claim because the plaintiffs provided "neither the

23

ORDER - 9

contract nor the terms that they allege were breached." *Id.* at 1011.  In contrast, here, plaintiffs have stated plausible claims, premised on various legal theories, that Chase owes them a sum certain ($80,000) plus interest.  Plaintiffs will be permitted to further pursue their claims, conduct discovery, and attempt to establish Chase's liability and prove damages.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1)     Defendant's motion to dismiss, docket no. 30, is DENIED.

(2)     The parties are DIRECTED to meet and confer and to file, by December 5, 2025, a Joint Status Report indicating whether they anticipate being prepared to proceed to trial on April 27, 2026, as scheduled.

(3)     The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 24th day of November, 2025.

Thomas S. Zilly
United States District Judge

ORDER - 10